UNITED STATES DISTRICT COURT
FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

FILED
2013 OCT 25 P 1: 14
CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

ROBERT PATTERSON
3180 Margelina Drive
Charlotte, North Carolina 28210

    Plaintiff,

v.

Case No. 1:13 CV 1338
LMB/TCB

JOHN B. MANN
9330 Harts Mill Road
Warrenton, Virginia 20186

and

MARTHA MANN
9330 Harts Mill Road
Warrenton, Virginia 20186

    Defendants,

---

## COMPLAINT

Plaintiff, Robert Patterson, ("Patterson"), *pro se*, for his Complaint against Defendants John B. Mann ("John Mann") and Martha Mann ("Dr. Martha Mann")(collectively "Manns" or "the Manns"), states as follows:

### THE PARTIES

1. Robert Patterson is an individual residing at 3180 Margelina Drive, Charlotte, North Carolina, 28210.

2. John B. Mann is an individual residing at 9330 Harts Mill Road, Warrenton, Virginia, 20186. John Mann is a business man and an engineer holding degrees in engineering from Princeton and New Your University. John Mann was at one time the chief engineer for MCI.

1

3. Dr. Martha Mann is an individual residing at 9330 Harts Mill Road, Warrenton, Virginia, 20186. Dr. Mann is a medical doctor holding a medical degree from Washington University in St. Louis and a degree in psychiatry from the University of Virginia. Dr. Martha Mann has been a practicing physician for more than thirty years.

4. John Mann and Dr. Martha Mann are husband and wife.

## JURISDICTION AND VENUE

5. This Court has Subject Matter Jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.00.

6. Venue is appropriate in this Court under 28 U.S.C. § 1391 because Defendants John Mann and Dr. Martha Mann reside in this district and the substantial portion of the events giving rise to Patterson's claims alleged herein occurred in this district.

## FACTUAL BACKGROUND

7. In December 2003 and February 2004, Plaintiff Patterson and Defendant John Mann formed two corporations--MannTechnologies, LLC, ("MannTech"), and The Registry Solutions Company, ("TRSC"), for the purpose of purchasing and developing certain telecom technology assets. Patterson and John Mann each owned a fifty percent (50%) interest in each company. Patterson provided the business opportunity and John Mann provided the initial capital of approximately one hundred seventy thousand dollars ($170,000.00).

8. John Mann was the chief operating officer of each company serving as president and treasurer of each company. John Mann had exclusive control of all company funds. Patterson was a director and vice president of each company.

9. From February 2004 until approximately November 2012, the two companies engaged in various commercial activities, including extensive litigations arising from disputes with the

seller of the telecom assets. Both companies ceased commercial activities in 2012 and on information and belief, neither company is currently active.

10. As a result of these commercial activities and the litigations, the two companies acquired certain assets, including four hundred ninety two thousand six hundred eleven (492,611) shares of ICO Global Communications (Holdings) Ltd., a company whose principles included Bill Gates and Craig McCaw. Currently the ICO stock (since June 2011 Pendrell - stock symbol PCO) is trading on NASDQ at approximately two dollars ($2.00) a share. The companies also recovered a judgment of one hundred thousand dollars ($100,000.00) from forfeiture of an injunction bond, and obtained a AAA Arbitration Award of approximately one hundred sixty five thousand dollars ($165,000.00). The companies were also awarded a "bad faith" sanction of approximately two hundred fifty thousand dollars ($250.000.00) by Judge Royce Lamberth, USDC, Washington, D.C. In total the ventures acquired assets whose value exceeded two million dollars ($2,000,000.00)

11. In the spring of 2012, Patterson sought from John Mann an accounting of the financial affairs of both companies. John Mann refused to provide any accounting but offered to execute a note for two hundred twenty-five thousand dollars, ($225,000.00) as repayment to Patterson of amounts due to Patterson from the operations of the businesses. This offer was never consummated.

12. Patterson has continued to demand an accounting, but none has been provided. Currently the Manns are not communicating with Patterson, having not responded to his emails or correspondence.

13. On information and belief, John Mann has secretly, and without Patterson's knowledge or consent, sold all company assets including all the ICO stock, and has taken all funds out of

the company accounts and deposited these company funds into the personal bank accounts of John Mann and Dr. Martha Mann, including the operating accounts of her medical practice. On information and belief the Manns have converted these funds for their personal enjoyment.

## CAUSES OF ACTION

### I. ACCOUNTING

14. Patterson re-alleges all allegations herein as if fully set forth here.

15. John Mann was the Chief Operation Officer, President and Treasurer of both TRSC and MannTech and had complete and exclusive control of all assets and moneys of each company. Patterson is a one half owner (50%) of both TRSC and MannTech and as such is entitled to a full and complete accounting for all receipts, assets and disbursements of each company.

16. Despite repeated demands for such an accounting, John Mann has refused to provide any accounting whatsoever of the two company's financial affairs.

17. Patterson has been injured by John Mann's refusal to provide an accounting of the companies' affairs.

### II. CONVERSION

18. Patterson re-alleges all allegations herein as if fully set forth here.

19. On information and belief, John Mann and Dr. Martha Mann have unlawfully converted assets and funds of TRSC and MannTech for their personal use and enjoyment.

20. John Mann and Dr. Martha Mann had and have no right to these assets or funds of TRSC and MannTech.

21. John Mann and Dr. Martha Mann took the assets and funds of TRSC and MannTech without Patterson's knowledge, consent, or authorization.

22. Patterson is entitled to immediate possession of one half of the assets and funds of TRSC and MannTech.

23. John Mann and Dr. Martha Mann intentionally, maliciously, willfully, wantonly, and with utter disregard for the legal rights of Patterson, withdrew the assets and funds from TRSC and MannTech and converted them for their personal use and enjoyment.

24. Neither John Mann nor Dr. Martha Mann has returned any of the assets or funds of TRSC or MannTech to the companies or to Patterson.

25. Patterson has been damaged by the conversion of his property and that of TRSC and MannTech by the Manns.

### III. EMBEZZLEMENT

26. Patterson re-alleges all allegations herein as if fully set forth here.

27. John Mann had complete and exclusive control over all assets and financial accounts of MannTech and TRSC as the Chief Operating Officer, President and Treasures of each.

28. On information and belief, and without the authorization, knowledge or consent of Patterson, John Mann has sold all the assets of both companies and has taken all funds belonging to each company for his personal use and enjoyment, depositing all such funds into the bank accounts of John Mann and Dr. Martha Mann for their personal use and enjoyment.

29. The Manns concealed from Patterson the sale of the companies' assets and the removal of the corporate funds.

30. The Manns' unlawful embezzlement of these funds was intentional, malicious, willful, wanton, and with utter disregard for the legal rights of Patterson.

31. Patterson is entitled to the immediate possession of that portion of these funds belonging to Patterson.

32. Patterson has been damaged by the Manns' unlawful embezzlement of these funds which rightfully belong to Patterson.

## IV. BREACH OF FIDUCIARY DUTY

33. Patterson re-alleges all allegations herein as if fully set forth here.

34. John Mann had sole and exclusive control of the financial accounts and assets of MannTech and TRSC, as Chief Operating Officer, President and Treasurer of each.

35. John Mann held control of these financial accounts in a fiduciary capacity on behalf of the other shareholder, Patterson.

36. John Mann breached his fiduciary duty to Patterson and to TRSC and MannTech by converting/embezzling the corporate assets for his personal use and enjoyment.

37. John Mann's breach of his fiduciary duty was intentional, malicious, willful, wanton, and with utter disregard for the legal rights of Patterson.

38. Patterson has been damaged by John Mann's breach of his fiduciary duties.

## V. CONSTRUCTIVE TRUST

39. Patterson re-alleges all allegations herein as if fully set forth here.

40. John Mann held exclusive control of the financial accounts and other assets of both MannTech and TRSC as their Chief Operating Officers, Presidents and Treasurers. John Mann held these corporate assets for the benefit of the respective corporations and their other shareholder, Patterson.

41. John Mann's exclusive control of these corporate assets created a constructive trust for the benefit of the corporations and their other shareholder, Patterson.

42. John Mann's removal of these assets was a breach of his constructive trust obligations to the corporations and to Patterson.

43. John Mann's and Dr. Martha Mann's retention of these assets is a breach of the constructive trust obligations to Patterson and the corporations.

44. Patterson has demanded that the Manns return these assets to their rightful owners.

45. The Manns' breach of their constructive trust obligations to Patterson, TRSC, and MannTech was willful, wanton, intentional, malicious, and with utter disregard for the legal rights of Patterson, TRSC, and MannTech.

46. Patterson has been damaged by the Mann's breach of their constructive trust obligations.

## VI. BREACH OF CONTRACT

47. Patterson re-alleges all allegations herein as if set forth here.

48. John Mann and Patterson entered into contractual agreements to share ownership of MannTech and TRSC equally.

49. Both John Mann and Dr. Martha Mann were, and are, aware that Patterson is entitled to one half interests in the assets of MannTech and TRSC.

50. Both Manns have acknowledged Patterson's right to one half of all the assets of MannTech and TRSC.

51. The Manns breached their agreements with Patterson by retaining Patterson's one half interests in TRSC and MannTech.

52. The Manns' breach of their contracts with Patterson was willful, intentional, malicious, wanton, and with utter disregard for the legal rights of Patterson.

53. Patterson has been damaged by the Manns' unlawful breach of their contracts with Patterson.

## VII. BREACH OF IMPLIED CONTRACT

54. Patterson re-alleges all allegations herein as if set forth here.

55. Commencing in July of 2005, Patterson provided legal counseling and advice, including preparation of numerous court pleadings (several hundred) on behalf of MannTech and representation in a AAA Arbitration Proceeding on behalf of TRSC. These services consumed the majority of Patterson's professional time from July 2005 until June of 2012, totaling more than 5000 hours.

56. Patterson provided these services believing that he would receive his one half interests in TRSC and MannTech.

57. From on or about July 2005, and continuing up to July of 2012, John Mann and Dr. Martha Mann repeatedly and continuously represented to Patterson that he would receive his one half interest in the companies.

58. Relying on the representations of the Manns that Patterson would receive his share, Patterson continued to provide legal services to TRSC and MannTech from July 2005 until the fall of 2012.

59. During this time, 2005-2012, John Mann repeatedly asked Patterson to provide legal services to the corporations, and John Mann accepted the benefit of Patterson's services on behalf of MannTech and TRSC.

60. TRSC and MannTech, and thereby the Manns, benefited from Patterson's labor and services.

61. There was an implied contract between Patterson and John Mann and Dr. Martha Mann whereby Patterson provided legal services in reliance on the promises of the Manns' that Patterson would be paid.

62. The Manns' refusal to pay Patterson is share of the corporations' assets as compensation for his services is a breach of the implied contract and as a consequence, has damaged Patterson.

## VIII. FRAUD and FRAUDULENT CONCEALMENT and CONSTRUCTIVE FRAUD

63. Patterson re-alleges all allegations herein as if set forth here.

64. The Manns, individually and collectively, have concealed from Patterson their theft of the assets of MannTech and TRSC.

65. The Manns knew that they had removed the assets and funds from MannTech and TRSC, to which they had no legal right, for their own personal enjoyment. The Manns fraudulently concealed from Patterson the fact that they had removed the corporate assets.

66. Patterson reasonably relied on the fraudulent representations of the Manns that the corporate assets were intact.

67. As a consequence of the Manns' fraudulent concealment of the theft of the corporate assets, Patterson has been damaged.

68. The Manns also fraudulently concealed their theft of the corporate assets to induce Patterson to continue to provide legal advice and consulting services to TRSC and MannTech.

69. The Manns' fraudulent actions were willful, intentional, malicious, wanton, reprehensible, and with utter disregard to the legal rights of Patterson.

70. Patterson has been damaged by the unlawful fraudulent actions of the Manns.

## IX. *QUANTUM MERUIT*

71. Patterson re-alleges all allegations as if set forth here.

72. The Manns knowingly concealed their theft of the corporate assets with the intent that Patterson be misled and deceived.

73. Patterson was misled and deceived by the knowingly fraudulent concealment of the theft by the Manns, and as a consequence of that deceit continued to represent the interests of the corporations and the Manns in various legal proceedings spanning seven (7) years and consuming thousands of hours of Patterson's professional time.

74. As a consequence of Patterson's services, MannTech and TRSC collectively amassed substantial assets, including 492,611 shares of ICO stock, (which at one point had a value of approximately two million dollars ($2,000,000.00); a bad faith judgment in excess of two hundred fifty thousand dollars ($250,000.00); an arbitration award exceeding one hundred sixty five thousand dollars ($165,000.00); recovery of a bond for one hundred thousand dollars ($100,000.00); as well as other income and profits.

75. Patterson is entitled to *quantum meriut* compensation for the services he provided to the Manns and to TRSC and MannTech.

## X. CONSPIRACY

76. Patterson re-alleges all allegations as if set forth here.

77. John Mann and Dr. Martha Mann agreed and conspired, each with the other, to steal the assets and funds of TRSC and MannTech. Patterson had a legal right to possess one half of these assets and funds.

78. JMann and MMann agreed, conspired, and acted in concert to conceal their theft of the funds to which Patterson had a legal right.

79. John Mann and Dr. Martha Mann knowingly made fraudulent statements and representations to Patterson in furtherance of the conspiracy.

80. The conspiratorial actions of the Manns were willful, intentional, malicious, wanton, reprehensible, and in utter disregard for the legal rights of Patterson.

81. As a consequence of the unlawful conspiracy of the Manns, Patterson has been damaged.

## XI. STATUTORY CONSPIRACY TO INJURE PATTERSON IN HIS TRADE OR BUSINESS and ATTEMPTED CONSPIRACY TO INJURE PATTERSON IN HIS TRADE OR BUSINESS

82. Patterson re-alleges all allegations as if set forth here.

83. From on or about December 2004 and continuing to date, John Mann and Dr. Martha Mann combined, associated, agreed and mutually undertook, or in concert together undertook, to willfully and maliciously injure Patterson in his reputation, trade, business and/or profession, by converting/embezzling moneys belonging to Patterson and thereby depriving Patterson of his interest in MannTech and TRSC.

84. On numerous occasions from and after December 2004 to date, the precise dates of which are unknown to Patterson, John Mann and Dr. Martha Mann willfully, maliciously, and unlawfully caused moneys and other assets belonging to TRSC and MannTech to be diverted to the personal bank accounts of the Manns for their personal enjoyments.

85. As a consequence of the willful, malicious, and unlawful conspiracy of John Mann and Dr. Martha Mann, Patterson has been damaged in his trade, business and reputation, including fraudulently inducing Patterson to expend thousands of hours of professional time on the representation and counseling of MannTech and TRSC.

## XII. UNJUST ENRICHMENT

86. Patterson re-alleges all allegations as if set forth here.

87. On information and belief, the Manns retain all of the assets of MannTech and TRSC, one half of which lawfully belongs to Patterson.

88. The assets wrongfully retained by the Manns include the 492,611 shares of ICO stock, (which at one point had a value of approximately two million dollars ($2,000,000.00); a bad

faith judgment in excess of two hundred fifty thousand dollars ($250,000.00); an arbitration award exceeding one hundred sixty five thousand dollars ($165,000.00); recovery of a bond for one hundred thousand dollars ($100,000.00); as well as other income and profits.

89. The Manns have been unjustly enriched by retention of these moneys and assets, one half of which lawfully belong to Patterson.

90. Patterson has been damaged by the Manns retention of these funds and assets, and thereby the Manns' unjustly enrichment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Robert Patterson, respectfully requests that the Court enter judgment against Defendants, John B. Mann and Dr. Martha Mann, jointly and severally, and provide the following relief:

1. Patterson shall be provided a complete accounting of all assets and/or funds of both MannTechnologies, LLC, and The Registry Solutions Company from December 2003 to date.

2. Patterson shall be provided copies of all books, records, accounts, financial statements, bank statements, financial account records, tax returns, or any other indicia of the transactions of both, The Registry Solutions Company and MannTechnologies, LLC, from December 2003 to date.

3. Patterson shall be provided with copies of all bank account statements for accounts into which any funds from eitherThe Registry Solutions Company or MannTechnology, LLC were deposited from December 2003 to date including the personal and business accounts of John Mann and Dr. Martha Mann.

4. Patterson shall be awarded damages in an amount sufficient to compensate Patterson for his losses, interest, costs, attorney's fees, and other damages authorized by law.

5. Patterson shall be awarded punitive damages.

6. Patterson shall be awarded treble damages.

7. All stock unlawfully sold by the Manns shall be replaced.

8. Patterson shall be awarded such other relief as may be just and proper.

Respectfully submitted,

*[signature]*

Robert Patterson, *pro se*

3180 Margelina Drive
Charlotte, North Carolina 28210
(202) 412-2404